IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| ELLEN BASCOM,<br><br>　　Plaintiff,<br><br>　　　v.<br><br>FIDUCIARY TRUST COMPANY INTERNATIONAL, TRUSTEE OF THE ARTICLE SEVEN TRUST F/B/O JOHN W. PORTER U/A MAURICE PORTER DTD 12/12/14<br><br>and<br><br>FIDUCIARY TRUST COMPANY INTERNATIONAL, TRUSTEE OF THE ARTICLE SEVEN TRUST F/B/O JOHN W. PORTER U/A JOAN PORTER DTD 12/12/14<br><br>　　Defendants. | Case No. 2:23-cv-7 |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss filed by the defendants, Fiduciary Trust Company International, Trustee of the Article Seven Trust f/b/o John W. Porter U/A Maurice Porter dtd 12/12/14 and Fiduciary Trust Company International, Trustee of the Article Seven Trust f/b/o John W. Porter U/A Joan Porter dtd 12/12/14 (collectively, "FTCI"). ECF Nos. 7 (Motion) and 8 (Memorandum). In the motion, FTCI argues that the Court lacks personal jurisdiction over it and that the complaint fails to state a claim. For the reasons stated herein, FTCI's motion (ECF No. 7) is **DENIED.**

I.  BACKGROUND

The plaintiff, Ellen Bascom, married her husband, John Porter, on June 3, 2010.[1] ECF No. 9-1 ¶ 2. The plaintiff and her husband lived in Virginia for the entirety of their marriage. *Id.* ¶ 11. On December 12, 2014, John Porter's parents ("the settlors") each executed a trust agreement. *Id.* ¶ 3. At the time the trusts were executed, the settlors spent the majority of their time (approximately 27 weeks per year) in Florida, and the rest of their time (approximately 25 weeks per year) in Virginia. *Id.* ¶ 6.

The trusts provided that, upon the deaths of the settlors, payments would be made by the trusts to the settlors' living children, including John Porter. ECF No. 1-1 at 20–23 (Joan S. Porter Trust Declaration), 68–71 (Maurice D. Porter Trust Declaration). The trusts also provided that, upon the death of John Porter, $500,000 from each trust would be set aside in a separate trust for the plaintiff. ECF No. 1-1 at 22, 70. The trusts would then each make yearly distributions of $50,000 to the plaintiff for a period of ten years, for a total of $1,000,000. *Id.* at 22, 70. The funding of the trusts for the plaintiff's benefit is contingent upon the plaintiff having been "married to and living with" John Porter at the time of his death. *Id.* at 22, 70.

---

[1] The facts recited here are taken from the complaint (ECF No. 1-1), the exhibits attached to the complaint, and the plaintiff's affidavit (ECF No. 9-1). For the purpose of deciding this motion, the Court "assume[s] the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Beginning in 2015, FTCI made quarterly distributions from the trusts to John Porter's checking account in Virginia. ECF No. 9-1 ¶ 8. During the time that FTCI was making distributions to John Porter, the plaintiff and her husband corresponded with FTCI from Virginia by phone, email, and mail regarding "the Trusts and other issues." *Id.* ¶¶ 12–17. One of the settlors, Joan Porter, owned a home in Chesapeake, Virginia at the time she died. *Id.* ¶ 15. FTCI had the property appraised and retained a broker to sell the home. *Id.*

At the time the plaintiff married John Porter, they resided in Norfolk, Virginia. ECF No. 1-1 ¶ 12. They later moved to Chesapeake, Virginia. *Id.* They then moved to Charlottesville, Virginia in 2020, but kept their house in Chesapeake. *Id.* ¶ 13. After they relocated to Charlottesville, "their relationship deteriorated." *Id.* ¶ 14. Eventually, John Porter returned to the Chesapeake house. *Id.* ¶ 15. The plaintiff "would spend weekdays in Charlottesville and weekends in Chesapeake." *Id.* ¶ 16. They did not divorce. *Id.* ¶ 17. John Porter was hospitalized on May 3, 2022, and died on June 24, 2022. *Id.* ¶¶ 18 and 23. While John Porter was hospitalized, the plaintiff "resided in the Chesapeake house practically every weekend" and "would sometimes sleep in John's hospital room instead of at the house." *Id.* ¶¶ 20–21.

## II.  LEGAL STANDARDS

### A.  Motions to Dismiss

#### i.  *Motions to Dismiss Under Rule 12(b)(2)*

A party may file a motion to dismiss a complaint based on a lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The party "must

affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The plaintiff's burden "varies according to the posture of a case and the evidence that has been presented to the court." *Id.* at 268. Where a court rules on the challenge "by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Id.* In such a posture, a court must "assume the credibility of [the plaintiff's] version of the facts" and "construe any conflicting facts in the parties' affidavits and declarations in the light most favorable to [the plaintiff]." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014). If a court "denies a Rule 12(b)(2) motion under the *prima facie* standard, it can later revisit the jurisdictional issue when a fuller record is presented." *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 197 (4th Cir. 2018).

### ii. *Motions to Dismiss Under Rule 12(b)(6)*

A party may file a motion to dismiss a complaint based on a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). And it must draw "all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). But a court need not

4

accept "legal conclusions drawn from facts, . . . unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *E. Shore Markets*, 213 F.3d at 180). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). With these considerations taken into account, the court determines whether the complaint alleges sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### iii. *Personal Jurisdiction*

"A federal district court may only exercise personal jurisdiction over a foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

Virginia's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." *Id.* (quoting Va. Code Ann. § 8.01–328.1(A)(1)). The Fourth Circuit has instructed that, "[b]ecause Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." *Id.* (citations omitted).

5

The constitutional due process inquiry is a three-part test, which includes "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers Corp.*, 561 F.3d at 278 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

To satisfy the first prong, a defendant must have "sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 277 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). This inquiry "protects a defendant from having to defend himself in a forum where he should not have anticipated being sued." *Id.* (citation omitted). A court may consider, among other things:

> whether the defendant maintains offices or agents in the forum state;
>
> whether the defendant owns property in the forum state;
>
> whether the defendant reached into the forum state to solicit or initiate business;
>
> whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
>
> whether the parties contractually agreed that the law of the forum state would govern disputes;
>
> whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
>
> the nature, quality and extent of the parties' communications about the business being transacted; and

6

> whether the performance of contractual duties was to occur within the forum.

*Id.* at 278 (citations omitted).

The second prong "requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Engineers Corp.*, 561 F.3d at 278–79. The third prong "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. Those factors include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Id.*

### III. ANALYSIS

#### A. Personal Jurisdiction

FTCI argues that the Court lacks personal jurisdiction because "[t]his case involves Trusts that were created in Florida by Florida residents and which are administered in Florida by a New York-based trustee." ECF No. 8 at 4. FTCI argues that "[i]n its capacity as trustee, FTCI lacks sufficient minimum contacts with the forum state." ECF No. 8 at 4. FTCI also appears to dispute that the plaintiff's claim

7

"arise[s] out of" FTCI's contacts with Virginia.[2] ECF No. 10 at 5–7. FTCI does not dispute the constitutional fairness prong of the personal jurisdiction analysis. The plaintiff does not argue that FTCI would be subject to general personal jurisdiction, only specific personal jurisdiction.

FTCI has sufficient contacts with the Commonwealth of Virginia to establish a *prima facie* case of personal jurisdiction. FTCI is registered to do business in the Commonwealth of Virginia and has a registered agent in Suffolk, Virginia. ECF No. 9-2 at 2 (State Corporation Receipt granting FTCI the "authority to transact business in Virginia with this office"), 61 (providing name and address of registered agent). FTCI has corresponded regularly with the plaintiff and John Porter in Virginia by

---

[2] It is difficult to discern FTCI's arguments relating to the "arise[s] out of" prong because its briefs conflate that prong with the purposeful availment/minimum contacts prong. For example, both subsections of FTCI's reply brief relating to personal jurisdiction make arguments that could be construed as challenging both prongs, but both subsections more clearly focus on challenging the purposeful availment/minimum contacts prong. *See* ECF No. 10 at 2–7. More specifically, the title of the first subsection argues that "Plaintiff Has Failed to Allege that FTCI Purposely Availed Itself of the Privilege of Conducting Business in Virginia Related to Plaintiff's Claim Against FTCI." *Id.* at 2. This section largely makes arguments relating to minimum contacts. *See id.* at 2–5. The title of the second subsection is less clearly related to purposeful availment, but the section closes by arguing that "Plaintiff has failed to allege that FTCI purposely availed itself of the privilege of conducting business in Virginia." *Id.* at 7. Out of caution, the Court has considered the arguments in these sections under both prongs and rejects them. FTCI argues that its "contacts [with Virginia] are wholly *un*related to Plaintiff's cause of action" and instead relate to provisions of the trust that do not involve the plaintiff. *Id.* at 3. But FTCI points to no case which stands for the proposition that a trust should be sliced into its component provisions for the purpose of analyzing personal jurisdiction. Therefore, at this stage, the Court finds that the plaintiff's claim "arise[s] out of" the defendants' contacts with Virginia, given that the contacts in the record before the Court deal primarily with its undertaking the role of trustee and then administering the trusts in that role.

8

mail, email, and telephone regarding the trusts. ECF No. 9-1 ¶¶ 12–17. FTCI has made distribution payments under the trusts to John Porter (including into an account shared by the plaintiff) in Virginia. *Id.* ¶¶ 8–10. When one of the settlors, Joan Porter, died, FTCI had her home in Chesapeake, Virginia appraised and retained a broker to sell the home. *Id.* ¶ 15.[3]

In addition, FTCI "deliberately engaged in significant or long-term business activities" in Virginia by undertaking the duties of trustee for two trusts that, from their inception, identified at least two beneficiaries—the plaintiff and John Porter— who were Virginia residents. *Consulting Engineers Corp.*, 561 F.3d at 278. The plaintiff states that she and John Porter were married in 2010 and lived in Virginia continuously thereafter. ECF No. 9-1 ¶¶ 2, 11. The trusts were not executed until 2014. *Id.* ¶ 3. In addition, the settlors spent nearly half of each year in Virginia at the time the trusts were executed. *Id.* ¶ 6. Thus, from the moment that the trusts were

---

[3] Specific personal jurisdiction is assessed on a claim-by-claim basis. *Jones v. Mutual of Omaha Ins. Co.*, No. 22-cv-905, 2022 WL 16763733, at *7 (D. Md. Nov. 7, 2022). Although the Court has, throughout its Opinion, largely considered the trusts together, here it must note that the activities taken by FTCI with respect to Joan Porter's assets would only apply, if at all, to the plaintiff's claims as to Joan Porter's trust. However, because the relationship between the assets and the trust is not established on this record, the Court has afforded this fact little weight in its analysis. If discovery reveals that the assets were part of the trust corpus, that fact could provide additional support for a finding of personal jurisdiction. *Cf. Hanson v. Denckla*, 357 U.S. 235, 251 (1958) (finding no minimal contacts because, *inter alia*, "[n]one of the trust assets has ever been held or administered in Florida").

9

executed (and from the moment that FTCI became the trustee),[4] the trusts involved the Commonwealth of Virginia.

These facts distinguish many of the cases relied upon by the defendant. In *Rose v. Firstar Bank*, 819 A.2d 1247 (R.I. 2003), the plaintiff attempted to sue an Ohio trustee in a Rhode Island court. *Id.* at 1249. The Supreme Court of Rhode Island found that the Rhode Island courts did not have personal jurisdiction over the Ohio trustee, in part because "the bank never purposefully availed itself of the benefits of doing business in this jurisdiction." *Id.* As the court noted, "[t]he situation here is that an Ohio resident created an Ohio trust in Ohio, naming an Ohio bank as trustee *for the benefit of the Ohio residents* who were then the sole beneficiaries of the trust." *Id.* at 1254 (emphasis added). The plaintiff-beneficiary did not move to Rhode Island until after the trust was created. *Id.* at 1249.

In *Matter of Est. of Ducey*, 241 Mont. 419 (1990), the Supreme Court of Montana found that the Montana courts did not have personal jurisdiction over the Nevada-based trustee of a trust that was created in Nevada. *Id.* After the trust was created, the settlor moved to Montana, where she resided until her death. *Id.* at 421. From Montana, the settlor received trust payments, corresponded with the trustee, and "carried on several bits of trust administration." *Id.* at 424–25. The court found

---

[4] It is not clear, on the record currently before the Court, when FTCI became the trustee. Both trusts designate "Fiduciary Trust International of the South" as the successor trustee, but the relationship between that entity and FTCI is not established by the record. ECF No. 1-1 at 25, 73. Nonetheless, because the plaintiff and John Porter resided in Virginia "[d]uring the entirety" of their marriage, which began before the trusts were executed, the plaintiff and John Porter were necessarily Virginia residents whenever FTCI became the trustee. ECF No. 9-1 ¶ 11.

10

that these activities did not warrant a finding of personal jurisdiction over the trustee. *Id.*

In *Hanson*, one of the questions before the Supreme Court was whether a Florida court had personal jurisdiction over a Delaware trustee of a Delaware-based trust created by a settlor in Pennsylvania. *Id.* at 238–39. The settlor later moved to Florida and resided there until her death. *Id.* at 239. The Court found that the Florida court did not have personal jurisdiction, reasoning that "[t]he first relationship Florida had to the agreement was years later when the settlor became domiciled there, and the trustee remitted the trust income to her in that State." *Id.* at 252. The Court also stated that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Id.* at 253.

The principle that emerges from the cases cited by the defendant is that a plaintiff's "unilateral activity" cannot create a roving zone of personal jurisdiction that drags defendants along wherever it goes. No such thing has happened here. The "first relationship" that Virginia had to the trusts was at their inception. It is not the "unilateral activity" of the plaintiff and her husband that has created personal jurisdiction over FTCI—it is FTCI's intentional and purposeful acts in accepting and exercising the role of trustee of a trust that has named Virginia-based beneficiaries and part-time Virginia-based settlors for its entire existence. As the First Circuit noted in *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994), one of the "cornerstones" of purposeful availment is foreseeability; *see also Consulting*

11

*Engineers*, 561 F.3d at 277 (the minimal contacts test "protects a defendant from having to defend himself in a forum where he should not have anticipated being sued.").[5] On these facts, where part-time Virginia residents created trusts to benefit Virginia residents, it was eminently foreseeable that the trustee of those trusts might be "haled into a Virginia court." ECF No. 8 at 10.

Other courts have come to the same conclusion on similar facts. In *Steen Seijo v. Miller*, 425 F. Supp. 2d 194 (D.P.R. 2006), the district court found that the defendant trustees had purposefully availed themselves of the court's jurisdiction based on the fact that "the beneficiary of the 1996 Trust, Mrs. Seijo, was a resident and domiciliary of Puerto Rico at the time the trust was established," "the grantor of the trust, Mr. Marvin, was a domiciliary of Puerto Rico at the time of his death," and "several trust disbursements" were "sent to Mrs. Seijo in Puerto Rico." *Id.* at 200. The court found that it had personal jurisdiction and noted that the trustees "voluntarily took on the responsibility of administering a trust established for the benefit of a resident of Puerto Rico." *Id.*

Similarly, in *Lobato v. Herndon*, No. 15-cv-2978, 2017 WL 1185202 (D. Md. Mar. 29, 2017), the settlor-trustees created a trust in Maryland while they were living in Maryland, for the benefit of four Maryland-based beneficiaries. *Id.* at *5. After the

---

[5] The other "cornerstone" of purposeful availment described by the First Circuit in *Ticketmaster* is "voluntariness." *Id.* at 207–08. The Court described "voluntariness" by citing the Supreme Court's admonition in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), that personal jurisdiction cannot be stablished by the "unilateral activity of another party or person." Here, as described above, it was not the unilateral activity of any party but FTCI that caused its contacts with Virginia.

death of one settlor-trustee, the other accepted the role of "Successor Trustee" and moved to Virginia, where she continued to correspond with and make distributions to the Maryland-based beneficiaries. *Id.* In holding that it had personal jurisdiction over the trustee, the court found it significant that the trustee "agreed to serve in a fiduciary capacity for the benefit of Maryland beneficiaries" and, later, "reaffirmed her acceptance and confirmation as Successor Trustee" while four of the six named beneficiaries resided in Maryland. *Id.* (internal quotation marks omitted).

To be sure, the fact of a beneficiary's residence in the forum state, standing alone, does not constitute purposeful availment. *See Hoag v. French*, 238 Ariz. 118, 123 (Ct. App. 2015) (holding that the court did not have personal jurisdiction over an out-of-state trustee where there was no evidence that the trustee "solicited appointment as trustee or sought to intentionally create a fiduciary or business relationship with Arizona."); *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 292 (1st Cir. 1999) ("[T]o make a prima facie showing of purposeful availment, it is not enough to prove that a defendant agreed to act as the trustee of a trust that benefitted a resident of the forum state."). But purposeful availment is "a totality-of-the-circumstances test" where "no single factor . . . is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Here, it is FTCI's cumulative contacts with the Commonwealth of Virginia—including its sustained correspondence with the plaintiff and her husband, its registration to conduct business in Virginia, its appointment of an agent in Virginia, the settlors' part-time residence in Virginia, *and* the beneficiaries' residence in Virginia—that have

13

established a *prima facie* showing of purposeful availment and, thus, personal jurisdiction.

The Court's holding and the underlying rationale are, at this point, limited to the plaintiff's *prima facie* showing. Discovery will likely reveal more information that is relevant to this issue. Because the plaintiff "bears the burden of demonstrating personal jurisdiction at every stage" following a Rule 12(b)(2) challenge, *Grayson*, 816 F.3d at 267, the Court "can later revisit the jurisdictional issue when a fuller record is presented." *Sneha Media*, 911 F.3d at 196–97.

### B. Whether the Plaintiff Was "Living With" John Porter at the Time of His Death

If the plaintiff was "living with" her husband at the time of his death, then she can take under the trusts; if she was not, then she cannot. FTCI argues that she was not, pointing to the fact that "Plaintiff and John Porter's marital relationship deteriorated, and Plaintiff asked him to leave the house in which they had been living together and move to a different house located 175 miles away." ECF No. 10 at 8 (internal quotation marks omitted). The plaintiff argues that, if the term "living with" is ambiguous, the trusts require construction, and "[u]nder Florida law, the construction of ambiguous terms is a question of fact and not appropriate for resolution at the motion to dismiss stage." ECF No. 9 at 11. Thus, the plaintiff argues whether she was "living with" her husband at the time of his death is a factual question for a jury. *Id.* at 10–11. The plaintiff also argues that, if the term "living with" is unambiguous, then she was living with John Porter at the time of his death

14

"to the extent that a person can be living with another person who has been hospitalized for nearly two months." *Id.* at 10.

The Court finds that the term "living with," as used in the trusts at issue here, is ambiguous.[6] The trusts do not define the term, and the boundary between what may constitute "living with" and what may not is unclear. As a result, the Court cannot resolve the parties' dispute over this term on a motion brought under Rule 12(b)(6). *BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 524 (11th Cir. 2017) (applying Florida law); *WBSY Licensing, LLC v. Duval Cnty. Sch. Bd.*, No. 3:21cv805, 2022 WL 1750425, at *2 (M.D. Fla. May 10, 2022) (same); *see also, e.g.*, *DFA Dairy Brands, LLC v. Primus Builders, Inc.*, No. 5:21cv26, 2021 WL 5826785, at *3 (W.D.N.C. Dec. 8, 2021); *Great N. Ins. Co. v. Recall Total Info. Mgmt., Inc.*, No. 8:13cv1829, 2014 WL 3853968, at *7 (D. Md. Aug. 1, 2014); *Abatena v. Norfolk State Univ.*, No. 2:13cv699, 2014 WL 1819665, at *8 (E.D. Va. May 7, 2014).

### C. Deference to FTCI's Interpretation of the Trusts

Finally, FTCI argues that, under Florida law, the Court must afford deference to FTCI's interpretation of the trusts unless the Court finds that FTCI has acted in bad faith. ECF No. 8 at 14–16. The Court rejects FTCI's argument. The cases cited by FTCI make clear that courts must only defer to exercises of a trustee's *discretion*. For example, FTCI cites *DeMello v. Buckman*, 916 So. 2d 882 (Fla. Dist. Ct. App.

---

[6] It is probably more accurate to say that the term "living with" is vague, given that the boundaries of the term are unclear. *See* E. Allan Farnsworth, *"Dmeaning" in the Law of Contracts*, 76 Yale L.J. 939, 953 (1967). However, courts generally treat vagueness as an ambiguity. *Id.* at 961–62.

15

2005), for the proposition that "courts 'have a limited role in supervising the exercise of a trustee's *discretion*.'" ECF No. 8 at 14 (quoting *DeMello*, 916 So. 2d at 886) (emphasis added). *DeMello*, in turn, cites a treatise on trusts, which explains that courts "will not control" a trustee's exercise of discretion "as long as he does not exceed the limits of the discretion conferred upon him." *DeMello*, 916 So. 2d at 886–87 (quoting Austin Wakeman Scott & William Franklin Fratcher, THE LAW OF TRUSTS § 187 (4th ed. 1988)). In other words, the settlors must confer discretion upon the trustee in order to qualify for deference from the Court.

Indeed, as FTCI argues, the trusts do confer some general discretion on the trustee as to "amounts to be distributed" under the trusts. *See* ECF No. 1-1 at 48 (Joan S. Porter Trust Declaration), 96 (Maurice D. Porter Trust Declaration). But FTCI's position in its motion is *not* that the plaintiff is entitled only to a specific "amount[] to be distributed;" its position is that the "[p]laintiff is not entitled to the establishment of the separate trusts" at all. ECF No. 8 at 11. The trusts unambiguously do *not* confer *that* discretion. Put another way, the provision of the trusts cited by FTCI does not confer the discretion to decide whether, and to whom, the trusts will distribute.

In any event, the provision cited by FTCI cannot override the plain, mandatory language of the specific provisions relating to the plaintiff. These provisions leave no room for discretion: if the plaintiff was "married to and living with" John Porter at the time of his death, "the Trustee ***shall*** set aside" assets for a trust in the amount of $500,000 (or the remaining assets of John Porter's trust), and the "Trustee ***shall***

16

distribute to [the plaintiff] the sum of Fifth Thousand Dollars ($50,000) per year." ECF No. 1-1 at 22 (Joan S. Porter Trust Declaration), 70 (Maurice D. Porter Trust Declaration) (emphasis added). A later provision of the trusts states that "[t]he words will and shall are used interchangeably in this Trust and mean, unless the context clearly indicates otherwise, that the Trustee *must* take the action indicated; as used in this Trust, the word may means that the Trustee has the *discretionary* authority to take the action but is not automatically required to do so." *Id.* at 53, 101 (emphasis added). As these provisions make clear, the settlors had at their disposal the tools they needed to distinguish between instances where the trustee was being conferred with discretion and instances where it was not. As to the provisions of the trust relating to the plaintiff, it is unambiguous that the settlors chose not to confer discretion upon the trustee.

## IV.     CONCLUSION

For the foregoing reasons, FTCI's motion (ECF No. 7) is **DENIED**.

In light of the Court's ruling on the Motion to Dismiss, a new Rule 26(f) Pretrial Order will issue.

**IT IS SO ORDERED.**

/s/ *[signature: JKW]*

Jamar K. Walker
United States District Judge

Norfolk, Virginia
May 8, 2023

17